

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00240-CV

**IN THE INTEREST OF C.H.**, J.H., E.H., I.B.H., and I.A.H., Children

From the 112th Judicial District Court, Sutton County, Texas
Trial Court No. CV06287
Honorable Pedro (Pete) Gomez Jr., Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
    Luz Elena D. Chapa, Justice
    Beth Watkins, Justice

Delivered and Filed: August 31, 2022

AFFIRMED

Appellants Mother and Father appeal from the trial court's order terminating their parental rights to their five children.[1]  Mother challenges the sufficiency of the evidence to support the trial court's findings on two statutory grounds for termination under Texas Family Code section 161.001 and its finding that termination is in the children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b).  Father challenges only the trial court's best-interest finding.  *See id.*  We affirm the trial court's order.

---

[1] To protect the identities of the minor children in this appeal, we refer to the parents as "Mother" and "Father."  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

## Background

On July 15, 2019, the Texas Department of Family and Protective Services (the "Department") filed a petition to terminate the parental rights of Father and Mother. The trial court held a bench trial on February 12, 2021. At the time of trial, the older children were ages eight, six, and four, and two twins were age two. The parents were not present at trial.

The Department's investigator testified that, on July 12, 2019, the Department received an intake related to the children. The report alleged that the family was traveling through Sonora, Texas, when an altercation occurred between Mother and Father in a moving vehicle. Mother jumped out of the vehicle, and Father attempted to evade law enforcement by driving at high speeds with the children in the vehicle. Father was arrested. After the incident, Mother stated that she jumped out of the vehicle because Father was choking and hitting her. She also stated that Father "was very paranoid and not in his right mind." Mother did not submit to a drug test and did not disclose the date of her last drug use; however, she stated that, if she were tested, she would test positive for marijuana and cocaine but not for methamphetamine because it was out of her system.

Next, the Department's caseworker testified. She testified that service plans were prepared for the parents. The record shows that the trial court ordered the parents' compliance with these service plans, and the parents signed the plans. The service plans required each parent to provide proof of employment and residence to the caseworker; complete parenting classes; submit to random drug tests; participate in a substance abuse assessment and follow all recommendations; attend a domestic-violence-prevention class; and participate in a psychological evaluation if requested. Additionally, the trial court specifically ordered the parents to submit to psychological or psychiatric evaluations; attend counseling sessions until the counselor determined that no further sessions were necessary; complete parenting classes; submit to drug and alcohol

dependency assessments; and submit urine, saliva, or hair follicle samples as directed by the Department for drug testing.

According to the caseworker, Mother "minimally" worked services. Mother completed a substance abuse assessment and in-patient drug treatment in July 2020, but after treatment, Mother relapsed. The caseworker also testified that Mother was arrested in December 2020 for possession of methamphetamine and a drug paraphernalia charge. According to the caseworker, Mother completed parenting classes and attended some counseling sessions, but Mother told the caseworker after her relapse that she would not continue with counseling.

Similarly, the caseworker testified that Father completed parenting classes but not counseling, although he attended four sessions. Father completed a substance abuse assessment, and he attempted an out-patient drug treatment program. However, Father was unsuccessfully discharged from the out-patient program, and he relapsed. Father next attended and completed an in-patient drug treatment program in July 2020, but after completion, he again relapsed. Father admitted to the caseworker in September 2020 that he was using methamphetamine, and Father was arrested in December 2020 on a charge for possession of methamphetamine and a drug paraphernalia charge.

The caseworker testified that four of the five children tested positive for illegal substances when they came into the Department's care in July 2019: the eight-year-old and the four-year-old tested positive for cocaine, one of the two-year-old twins tested positive for cocaine and methamphetamine, and the other twin tested positive for methamphetamine. At the beginning of the case, Mother tested positive for cocaine and methamphetamine, and Father was incarcerated and was not drug tested.

The caseworker had difficulty reaching the parents during the months leading up to trial; however, according to the caseworker, the parents knew about the trial. The caseworker testified

that the parents had a shared home and that a family friend paid bills for them, but the caseworker had never seen the home and did not know if the parents still lived there. The caseworker also did not know if the parents were together or separated. According to the caseworker, the parents loved the children, and the children loved them. The caseworker testified that the parents visited the kids "off and on" throughout the case. According to the caseworker, the parents visited regularly for a time but when they relapsed, they missed visits and contact faded.

At the time of trial, the two-year-old twins were living with foster parents, who wished to continue the placement long-term. The three older children were living in a short-term foster placement. The Department wished to place all five children with a paternal great-aunt for adoption, or at least the oldest three if the great-aunt could not take all five. However, the Department had deferred placement with the great-aunt while she attempted to obtain a larger home and vehicle. The caseworker also testified that the six-year-old was on medication for ADHD and that the four-year-old would probably need medication for the disorder as well. The caseworker testified that the Department would give the great-aunt training on how to care for the children with ADHD.

Last, the children's guardian ad litem testified that the parents loved their children and received support from a friend. The ad litem desired termination of the parents' parental rights because of their continued drug use.

After hearing this testimony, the trial court found that Mother and Father each knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger their physical and emotional well-being, *see id.* § 161.001(b)(1)(D), and that each parent engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the children's physical and emotional well-being, *see id.* § 161.001(b)(1)(E). The trial court also found that termination of Mother's and Father's parental rights was in the children's

best interest. *See id.* § 161.001(b)(2). The trial court signed an order terminating the parents' parental rights, and both parents appealed.

## STANDARD OF REVIEW

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest. *See id.* § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). In reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

## MOTHER

Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's findings on both statutory predicate grounds for termination and its finding that termination is in the children's best interest.

**Predicate Statutory Grounds**

The trial court determined that predicate statutory grounds (D) and (E) had been satisfied. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). Section 161.001(b)(1)(D) allows a trial court to terminate parental rights if it finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." *Id.* § 161.001(b)(1)(D). Under subsection (D), the trial court examines "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being," although parental conduct can be a factor that contributes to this environment. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "'Environment' refers to the acceptability of living conditions, as well as a parent's conduct in the home." *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *Id*. "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.) (internal quotation omitted).

Section 161.001(b)(1)(E) allows a trial court to terminate a parent's rights if the court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Under subsection (E), the trial court must determine whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being. *See In re J.T.G.*, 121 S.W.3d at 125.

In the context of both subsection (D) and (E), "endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or mental health. *In re M.C.*, 917 S.W.2d 268, 269

(Tex. 1996) (per curiam); *In re J.T.G.*, 121 S.W.3d at 125. "However, there are some distinctions in the application of subsections (D) and (E)." *A.S. v. Tex. Dep't of Family & Protective Servs.*, 394 S.W.3d 703, 713 (Tex. App.—El Paso 2012, no pet.). First, termination under subsection (D) is permitted based upon only a single act or omission. *In re R.S.-T.*, 522 S.W.3d at 109. On the other hand, under subsection (E), our analysis may not rest on a single act or omission; it must be "a voluntary, deliberate, and conscious course of conduct." *Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citation omitted). Second, "[i]n evaluating endangerment under subsection (D), we consider the child's environment before the Department obtained custody of the child." *In re S.R.*, 452 S.W.3d at 360. "Under subsection E, however, courts may consider conduct both before and after the Department removed the child from the home." *Id*.

Predicate Ground (D)

Mother argues that statutory predicate ground (D) does not apply to the conduct of a parent toward a child. However, as stated, a parent's conduct can be a factor that contributes to endangering conditions or surroundings. *In re J.T.G.*, 121 S.W.3d at 125; *see In re S.R.*, 452 S.W.3d at 360. Mother also asserts that she did not have actual or constructive possession of the children, that the children's counselor testified that the children lived in an unstable environment, and that the children's visits with Mother were good and without emotional outbursts. However, the record cites Mother gives in her brief to support these assertions direct us to testimony that is irrelevant to her points. Having reviewed the entire trial record, we can discern no relevant testimony on these matters.

Instead, the record contains testimony by the Department's investigator that Mother and Father had a violent altercation before Mother jumped out of a moving vehicle, and Mother left the children with Father in a high-speed police pursuit. *See R.S.-T.*, 522 S.W.3d at 110 ("Domestic

violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." (citation omitted)); *cf. In re A.R.G.*, No. 04-19-00749-CV, 2020 WL 1277739, at *3 (Tex. App.—San Antonio Mar. 18, 2020, no pet.) (mem. op.) (testimony that mother drove with her children while under the influence of methamphetamine supported subsection (D) finding). Further, the trial court reasonably could have inferred that Mother exposed the children to cocaine and methamphetamine before removal. *Cf. In re A.C.*, 560 S.W.3d 624, 632 (Tex. 2018) (factfinder may form firm conviction based on direct evidence and reasonable inferences). After the children were removed, four of the five children tested positive for methamphetamine, cocaine or both, and Mother stated after the incident that she would test positive for marijuana and cocaine if tested, but not for methamphetamine because it was out of her system. Later, when she submitted to the Department's first drug test, she tested positive for cocaine and methamphetamine. "Evidence of illegal drug use supports a conclusion that a child's surroundings endanger his or her physical or emotional well-being." *In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at *4 (Tex. App.—San Antonio Mar. 11, 2020, pet. denied) (mem. op). We hold the trial court reasonably could have formed a firm belief or conviction that, before removal, Mother placed the children in surroundings which endangered their physical and emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D).

### Predicate Ground (E)

The statutory predicate ground (E) concerns a parent's endangering conduct. In evaluating endangerment under subsection (E), we may consider conduct both before and after the children's removal. *See In re S.R.*, 452 S.W.3d at 360; *cf. In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.) (consolidating review of "interrelated" subsections (D) and (E)).

In addition to evidence of Mother's drug use before the children's removal, the Department's caseworker testified that Mother relapsed after completing a drug treatment program

in July 2020. Later, in December 2020, Mother was arrested for possession of methamphetamine and a drug paraphernalia charge. "[B]ecause a parent's illegal drug use exposes her children to the possibility the parent may be impaired or imprisoned, evidence of illegal drug use supports a finding that the parent engaged in a course of conduct that endangered the children's physical or emotional well-being." *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *3 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (citation omitted). "Evidence that a parent continued to use illegal drugs even though the parent knew her parental rights were at risk is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature endangers a child's well-being." *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (citations omitted). We hold that the evidence is legally and factually sufficient to support the trial court's subsection (E) finding.

### Best Interest

Mother also challenges the trial court's finding that termination of her parental rights was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). There is a strong presumption that keeping a child with a parent is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, it is equally presumed that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Texas Family Code section 263.307(b). *See id.* § 263.307(b).

Our best-interest analysis is guided by consideration of the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking

custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See id.*; *accord In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013). The Department is not required to prove each factor, and the absence of evidence regarding some of the factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in a child's best interest, particularly if the evidence is undisputed that the parent-child relationship endangered the safety of the child. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The focus of our review is whether the evidence, as a whole, is sufficient for the trial court to have formed a strong conviction or belief that termination of the parent-child relationship is in the best interest of the child. *Id.*

As detailed above, the evidence supports the trial court's endangerment findings. *Cf. id.* at 28 (explaining that evidence that proves one or more statutory grounds for termination may be probative in proving termination is in child's best interest). This case began when Mother and Father engaged in a violent altercation while Father was driving. Although Father assaulted Mother and the violence was not directed at the children, the children were placed in immediate danger of physical harm as a result of the violence. "Simply exposing a child to the other parent's violence is a relevant consideration in determining a child's best interest." *See In re S.A.*, No. 04-17-00571-CV, 2018 WL 521626, at *4 (Tex. App.—San Antonio Jan. 24, 2018, no pet.) (mem. op.) (citation omitted); *see also* TEX. FAM. CODE ANN. § 263.307(b)(12)(E) (providing court may consider whether parent has adequate parenting skills to protect child from repeated exposure to violence although violence may not be directed at child).

Mother was arrested for possession of methamphetamine and a drug paraphernalia charge just two months before trial. The caseworker also testified that Mother relapsed after completing

an in-patient drug treatment program seven months before trial. "A history of drug abuse and an inability to maintain a lifestyle free from arrests and incarcerations is relevant to a trial court's best-interest determination." *In re F.M.A.*, No. 04-16-00318-CV, 2016 WL 4379456, at \*3 (Tex. App.—San Antonio Aug. 17, 2016, pet. denied) (mem. op.) (citation omitted); *see also In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied) ("A trier of fact may measure a parent's future conduct by his past conduct . . . ."). Mother's continued illegal drug use exposed the children to potential emotional distress and instability. *See In re E.C.*, No. 02-20-00022-CV, 2020 WL 2071755, at \*7 (Tex. App.—Fort Worth Apr. 30, 2020, no pet.) (mem. op.) ("A child's emotional well-being can be negatively affected when a parent repeatedly commits criminal acts that subject the parent to incarceration, resulting in the parent's absence from the child's life and the inability to provide support, and thus creating an emotional vacuum in the child's life and subjecting the child to ongoing uncertainty regarding who will take care of him."). According to the caseworker, the parents' visits and contact with their children faded after they relapsed.

Further, Mother's failure to comply with the trial court's order for counseling indicated that Mother did not have the motivation or ability to seek out needed services. *See In re J.M.T.*, 519 S.W.3d at 270 ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future."); *see also* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (providing courts may consider willingness and ability of child's family to seek out, accept, and complete counseling services and willingness and ability of child's family to effect positive environmental and personal changes within reasonable period of time); *Holley*, 544 S.W.2d at 371–72 (listing parental abilities of individual seeking custody and programs available to assist individual as best-interest factor).

The Department's plan for the children was adoption by their great-aunt, who would be provided training on how to care for the children with ADHD; however, there was uncertainty about when placement with the great-aunt could occur and if the great-aunt could adopt all five children or just the older three. *See In re C.H.*, 89 S.W.3d at 28 (holding termination may be in a child's best interest "even if the agency is unable to identify with precision the child's future home environment"). The current foster parents for the two-year-old twins desired to continue as a long-term placement. Mother and Father were not present at trial, and the caseworker did not know if the parents were together or separated and whether the parents still lived in their home. Additionally, the caseworker had difficulty reaching Mother and Father in the months immediately preceding trial.

Although by all account, the parents loved the children and the children loved the parents, "a child's love of his parents cannot compensate for the lack of an opportunity to grow up in a normal and safe way equipped to live a normal, productive, and satisfying life." *In re W.S.M.*, 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.); *see also In re C.H.*, 89 S.W.3d at 27 (Department is not required to prove each *Holly* factor). We hold the evidence is legally and factually sufficient to support the trial court's finding that termination of Mother's parental rights is in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *see also In re A.B.*, 437 S.W.3d 498, 505 (Tex. 2014) (recognizing appellate court need not detail all evidence if affirming termination judgment).[2]

### FATHER

The trial court's best-interest finding as to Father is also supported by legally and factually sufficient evidence. The investigator testified that Father was the perpetrator of domestic violence against Mother. In addition, he engaged in reckless driving while the children were in his vehicle.

---

[2] In a final issue, Mother argues the trial court erred by denying her conservatorship. However, because we have determined that the trial court did not err in terminating Mother's parental rights, she cannot challenge the portion of the termination order that relates to the appointment of conservators. *See In re M.R.D.*, No. 04-19-00524-CV, 2020 WL 806656, at *9 (Tex. App.—San Antonio Feb. 19, 2020, pet. denied) (mem. op.). We, therefore, overrule Mother's issue on conservatorship.

As with Mother, Father completed a drug rehabilitation program, but relapsed and was arrested for a drug possession charge just two months before trial. As with Mother, Father did not complete court-ordered counseling.

Father complains that little of the trial testimony concerns the children's unique emotional and physical needs and other best-interest considerations; however, in rejecting a similar argument, the supreme court noted that the absence of evidence about some of the best-interest considerations does not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in a child's best interest, particularly if the evidence is undisputed that the parental relationship endangered the safety of the child. *In re C.H.*, 89 S.W.3d at 28. Here, Father does not dispute the predicate endangerment findings based, in part, on testimony that Father engaged in a high-speed evasion of police with the children in his vehicle. Additionally, there was testimony that Father admitted to methamphetamine use five months before trial and was arrested on a drug-possession charge two months before trial. "Evidence that a parent continued to use illegal drugs even though the parent knew [his] parental rights were at risk is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature endangers a child's well-being." *In re K.J.G.*, 2019 WL 3937278, at *5.

Father acknowledges his completion of a drug treatment program and subsequent relapse and arrest. He argues "evidence of his attempts, setbacks, and successes in rehab could suggest that he will continue to work rehab services and could successfully overcome addiction." The trial court, however, reasonably could have considered Father's long history of drug abuse and poor judgment in the months immediately preceding trial to form a firm belief that Father was unable to achieve long-term improved conduct and provide adequate care for his children in the future. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) ("[E]vidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of . . .

irresponsible choices."); *In re E.D.*, 419 S.W.3d at 620 ("A trier of fact may measure a parent's future conduct by his past conduct . . . ."); *see also Wischer v. Tex. Dep't of Family and Protective Servs.*, No. 03-12-00165-CV, 2012 WL 3793151, at *10 (Tex. App.—Austin Aug. 29, 2012, no pet.) (mem. op.) (holding factfinder could have concluded parent "lack[ed] the ability to provide adequate care by showing poor judgment currently and in the past").

We hold the evidence is legally and factually sufficient to support the trial court's finding that termination of Father's parental rights is in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *see also In re A.B.*, 437 S.W.3d at 505.

## CONCLUSION

The trial court's order of termination is affirmed.

Rebeca C. Martinez, Chief Justice